# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DONALD M.,

    *Plaintiff,*

vs.

Case No. 20-CV-01107-EFM

ANDREW M. SAUL,
Commissioner of Social Security,

    *Defendant,*

# MEMORANDUM AND ORDER

Plaintiff Donald M. seeks review of a final decision by Defendant, the Commissioner of Social Security ("the Commissioner"), denying his application for supplemental security income benefits under Title XVI of the Social Security Act. Because the administrative decision was supported by substantial evidence in the record, the Court affirms the Commissioner's denial of benefits.

## I.    Factual and Procedural Background

Plaintiff applied for supplemental security income on November 27, 2017, alleging significant physical and mental disabilities. Plaintiff's application was initially denied on December 26, 2017, and again upon reconsideration on July 5, 2018. Plaintiff filed a written request for a hearing which was subsequently held on February 5, 2019. John A. Pottinger, the

administrative law judge presiding over the hearing ("the ALJ"), issued an order on March 29, 2019, concluding that Plaintiff was not disabled. The Appeals Council denied review on February 24, 2020.

Accordingly, the ALJ's March 29, 2019, decision became the final decision of the Commissioner. Plaintiff filed a complaint in the United States District Court for the District of Kansas. He seeks reversal of the ALJ's decision, remand to the Commissioner for a new administrative hearing, and payment of costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

**A.      Relevant Medical History[1]**

On January 7, 2016, Plaintiff sought a psychological evaluation from Dr. Mark Goodman. Dr. Goodman noted that Plaintiff was cooperative, friendly, worked slowly and carefully, and tried his best on all test items. At the conclusion of testing, Dr. Goodman diagnosed Plaintiff with major depressive disorder, recurrent and severe without psychotic features, but with strong bipolar features. Dr. Goodman recommended psychotropic medication and psychotherapy, and Plaintiff began therapy with Dr. Goodman on a weekly to bi-weekly basis.

On December 26, 2017, state agency psychologist Dr. James Morgan reviewed Plaintiff's record and opined that Plaintiff had mild limitations in his ability to: understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace due to his mental impairments. Dr. Morgan further opined that Plaintiff had no severe mental impairments.

---

[1] Although Plaintiff's disability application alleged multiple physical and mental disabilities, Plaintiff's argument on appeal is limited to the ALJ's findings regarding his ability to initiate tasks and persist at tasks. Facts relating to Plaintiff's other alleged impairments are therefore omitted as irrelevant.

On April 5, 2018, Dr. Goodman performed a second psychological evaluation on Plaintiff. Dr. Goodman found Plaintiff still suffered from recurrent, severe, depressive disorder, without psychotic symptoms, but with severe passive-aggressive anger and avoidant features. Shortly thereafter, Dr. Goodman wrote a letter reflecting this diagnosis and opining that Plaintiff was disabled psychologically from performing a full-time job.

On June 15, 2018, Dr. Melvin Berg performed a psychological consultive evaluation on Plaintiff. Dr. Berg found that Plaintiff could attend to and process simple information such that he can perform unskilled tasks and could accommodate the demands of superficial interpersonal interactions. Dr. Berg further stated that Plaintiff's ability to consistently initiate tasks was uncertain, but noted that Plaintiff experienced discouragement and frustration, which could impact his ability to persist at tasks.

On July 3, 2018, another non-examining State agency psychologist, Dr. Rosalie McMaster, opined that Plaintiff had moderate limitations in his ability to understand, remember, or apply information; interact with others; and concentrate, persist or maintain pace. Dr. McMaster further found Plaintiff was capable of, at least, 1-2 step instructions, and that Plaintiff could have occasional contact with the general public, supervisors, and coworkers.

On February 5, 2019, Dr. Goodman executed a medical source statement on Plaintiff's behalf. Dr. Goodman opined that Plaintiff would be off task 25% or more of the time and would need to leave work early or be absent four days a month due to his symptoms. Dr. Goodman further stated that Plaintiff had an extreme limitation in his ability to complete a normal workday and workweek, and to perform at a consistent pace without an unreasonable number of length and rest periods. Dr. Goodman also found Plaintiff would have only mild limitations in understanding

and remembering simple instructions, and moderate limitations in his ability to sustain concentration and persistence.

**B.      Hearing and Decision**

Plaintiff appeared at the hearing held February 5, 2019.  Plaintiff testified he would be unable to perform work where he alternated between sitting and standing because of his depression.  Plaintiff further testified that he experienced mood swings with a tendency to explode on people, throw things, and get physical.  As for his daily activities, Plaintiff stated he spent the majority of his days sleeping and watching television, but that he also went to the store with his wife, played games on his phone, cleaned the house, and took care of his kids and pets.

After reviewing Plaintiff's records, the ALJ concluded that Plaintiff suffered from major depressive disorder with strong bipolar features.  The ALJ further concluded, however, that the severity of Plaintiff's impairments did not meet or equal the Social Security Administration's designated list of impairments.  In light of this finding, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with the following relevant limitations: "can maintain concentration, persistence, and pace for simple tasks . . . . He can have no interaction with the general public and can have occasional interaction with coworkers and supervisors, but with no tandem or group tasks required."[2]

A vocational expert also testified at the hearing.  The ALJ proposed a hypothetical with Plaintiff's physical and mental limitations as outlined in the RFC.  The vocational expert testified that an individual with these limitations could perform work as an assembler, small parts; marker; or production solderer.  The expert then testified that these jobs would be available even if the

---

[2] SSA R., Doc. 12, p. 24.

individual were further limited to no interactions with the general public. The vocational expert did testify, however, that no gainful employment would be available to an individual that either would be off task more than 15 percent of the time or would be absent from work two or more times a month on an average basis.

Relying on this information, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff now argues the RFC does not account for Plaintiff's credible limitations, and as such, remand is appropriate.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[3] The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[4] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[5] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[6]

An individual is disabled under the Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[7] This

---

[3] 42 U.S.C. § 405(g).

[4] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[5] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[6] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[7] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[8] The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[9] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[10]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[11] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[12]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[13] The claimant

---

[8] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[9] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[10] *Barkley*, 2010 WL 3001753, at *2.

[11] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[12] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[13] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

bears the burden in steps one through four to prove a disability that prevents the performance of her past relevant work.[14] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[15] The court addresses the error alleged in Plaintiff's Social Security Brief.

### III. Analysis

Plaintiff claims the ALJ erred by failing to include Plaintiff's credible limitations in the RFC or to explain the omission. Specifically, Plaintiff claims remand is required for two reasons: (1) the ALJ failed to incorporate in the RFC Plaintiff's credible limitations in the ability to initiate tasks and persist at tasks, or (2) the ALJ erred by failing to explain why he omitted these limitations in the RFC, as required by caselaw and relevant regulations.

### A. The RFC Incorporates Plaintiff's Limitations

Plaintiff first argues remand is required because the ALJ failed to incorporate Plaintiff's limitations in initiating tasks and persisting at tasks. The ALJ found, in relevant part, that Plaintiff could maintain concentration, persistence, and pace for simple tasks with normal breaks. According to Plaintiff, this failed to incorporate Dr. Berg's opinion, which found "[Plaintiff's] ability to consistently initiate tasks is uncertain . . . . [Plaintiff] experiences discouragement and frustration which may impact his ability to persist at tasks."[16] In finding Dr. Berg's opinion mostly persuasive, the ALJ stated, "[o]verall, this opinion is mostly consistent with the medical evidence of record, particularly in [Plaintiff's] ability to attend to and process simple information, which is

---

[14] *Lax*, 489 F.3d at 1084.

[15] *Id.* (citation omitted).

[16] SSA R., Doc. 12, p. 688.

limited by his feelings of discouragement and frustration."[17]  Plaintiff argues the ALJ failed to incorporate the credible limitations outlined by Dr. Berg, specifically as to Plaintiff's ability to initiate tasks and persist at tasks, and as such, remand is required.

The Commissioner disagrees.  According to the Commissioner, the ALJ's RFC is supported by more than a scintilla of evidence, and therefore must be affirmed as supported by substantial evidence.  Specifically, the Commissioner argues that, in coming to his decision, the ALJ properly weighed all of the following evidence: Plaintiff's testimony; Plaintiff's history of mental health treatment; Dr. Berg, Dr. Morgan, and Dr. McMaster's medical opinions; and Plaintiff's "somewhat normal" level of daily activities.  The Commissioner further argues that the ALJ sufficiently incorporated Dr. Berg's medical opinion by limiting Plaintiff to certain kinds of work activity, i.e., only simple tasks.  As such, according to the Commissioner, the ALJ properly considered the record as a whole and incorporated all of Plaintiff's credible limitations in the RFC.

The Court agrees with the Commissioner.  This case is similar to *Amanda C. v. Saul*.[18]  In that case, Plaintiff argued the ALJ omitted credible limitations in the RFC, much like Plaintiff's argument here.  There, a medical opinion found the claimant had moderate limitations in maintaining attention or concentration for extended periods.  The RFC did not state these limitations explicitly, but found the claimant was able to "understand, remember and carry out simple instructions and perform simple, routine tasks."[19]  The court held that, under Tenth Circuit law, the RFC sufficiently incorporated the moderate limitations set out in the medical opinion because, "even if the ALJ does not 'repeat the moderate limitations assessed by the doctor,' there

---

[17] SSA R., Doc. 12, p. 31.

[18] *Amanda C. v. Saul*, 2021 WL 50935 (D. Kan. 2021).

[19] *Id.* at *3.

is no error if the ALJ 'incorporates these limitations by stating how the claimant was limited in the ability to perform work-related activities.' "[20]

Here, the ALJ incorporated the limitations set forth by Dr. Berg in the RFC by finding Plaintiff can maintain concentration, persistence, and pace for simple tasks. Although the ALJ did not explicitly mention Plaintiff's ability to consistently initiate tasks and persist at tasks, he was under no duty to do so under *Smith*. Rather, the ALJ properly incorporated Plaintiff's limitations in relation to work-related activities when limiting Plaintiff to only simple tasks. This conclusion is also supported by the record as a whole, including Dr. Berg's own opinion that Plaintiff could attend to and process simple information such that he can perform unskilled tasks, as well as Plaintiff's relatively normal daily activities.

Plaintiff's argument is further weakened by Dr. Berg's relatively inconclusive opinion. Specifically, Dr. Berg did not find that Plaintiff was limited in his ability to consistently initiate tasks, but rather found Plaintiff's ability to consistently initiate tasks was "uncertain."[21] This potential, not explicit, limitation is undoubtedly covered by the RFC limiting Plaintiff to simple tasks. And similarly, Dr. Berg's opinion that Plaintiff's ability to persist at tasks "may be impacted" by his feelings of discouragement and frustration is also covered by the limitation to simple tasks. But even if these two statements were explicit moderate limitations in the Plaintiff's ability to initiate tasks and persist at tasks, the ALJ properly incorporated them in the RFC by limiting Plaintiff to simple tasks.

---

[20] *Amanda C.*, 2021 WL 50935 at *3 (citing *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (internal alteration omitted)).

[21] The Commissioner argues this statement does not constitute a medical opinion under the new regulations. *See* 20 C.F.R. § 416.913(a)(2) (2017). Because the Court finds this opinion is sufficiently incorporated in the RFC, the Court need not decide this issue.

**B.     The ALJ's Discussion was Consistent with the Agency's New Regulations**

Plaintiff next argues the ALJ erred by failing to explain why he chose to omit Plaintiff's relevant limitations in the RFC. Plaintiff argues that SSR 96-8p requires that the ALJ provide a narrative discussion describing how the evidence supports each conclusion.[22] Plaintiff also argues that, under SSR 96-8p, if the RFC conflicts with an opinion from a medical source, the ALJ must explain why the medical opinion was not adapted. According to Plaintiff, the ALJ failed to satisfy both of these requirements.

The Commissioner argues the ALJ's analysis of Dr. Berg's opinion was consistent with the agency's new regulations regarding medical source opinions. According to the Commissioner, the ALJ properly applied these regulations by not giving any specific evidentiary weight to treating source opinions, as well as discussing the consistency and supportability of the medical opinions. Finally, the Commissioner argues that because the ALJ incorporated Dr. Berg's opinion into the RFC, there were no ambiguities or inconsistencies for the ALJ to discuss.

As the Commissioner correctly noted in his brief, and Plaintiff does not dispute, a new regulatory framework for considering medical evidence applies to all claims filed after March 27, 2017 – as was this case. This new framework "[focuses] more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice."[23] The new regulations direct the ALJ to focus on the persuasiveness of the medical opinions or prior administrative medical findings by applying the

---

[22] *See* SSR 96-8p, 1996 WL 374184, at *7 (1996).

[23] Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854 (Jan. 18, 2017).

following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors.[24]

Under the new regulations, an ALJ is to base persuasiveness primarily on the factors of consistency and supportability and must articulate in his decision how he considered these two factors.[25] He may, but is not required to, explain how he considered the other three factors: relationship, specialization, and other factors tending to support or contradict an opinion.[26] The persuasiveness of the other three factors are only required to be articulated when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same."

Here, the ALJ did just as the new regulations require. He explained, based on the factors of consistency and supportability, how persuasive he found Dr. Berg's opinion. The ALJ found Dr. Berg's opinion was mostly consistent with the record and accounted for his finding that Plaintiff's ability to attend to and process simple information might be affected by discouragement and frustration. This discussion satisfies the ALJ's obligation to discuss the factors of consistency and supportability.[27]

The Court agrees with Plaintiff that an ALJ must explain how any ambiguities and material inconsistencies in the evidence were considered and resolved.[28] And, if the ALJ's RFC assessment

---

[24] 20 C.F.R. § 416.920c(a)-(c) (2017).

[25] *Id.* at § 416.920c(b)(3).

[26] *Id.*

[27] Plaintiff does not argue that two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," which would require explicit discussion of the remaining factors.

[28] *See* SSR 96-8p, 1996 WL 374184, at *7.

conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.[29] The problem for Plaintiff, however, is that he fails to show any material inconsistencies and ambiguities or that the RFC conflicts with Dr. Berg's opinion.[30]

Although Dr. Berg found that Plaintiff's ability to initiate tasks was uncertain and his ability to persist at tasks may be affected by feelings of discouragement and frustration, Dr. Berg further opined that Plaintiff could attend to and process simple information such that he can perform unskilled tasks. The RFC's limitation that Plaintiff could maintain concentration, persistence, and pace for only "simple tasks" sufficiently matched Dr. Berg's opinion. Because the ALJ sufficiently incorporated Dr. Berg's opinion in the RFC, there were no ambiguities or material inconsistencies for the ALJ to address.

For the same reasons, the RFC also does not conflict with Dr. Berg's opinion. Plaintiff cannot create an ambiguity or inconsistency merely because his view of the evidence differs from the ALJ's – "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."[31] Accordingly, the ALJ satisfied his duty to explain, based on the factors of consistency and supportability, how persuasive he found Dr. Berg's opinion. The ALJ was under no duty to do more.

---

[29] *Id*.

[30] Plaintiff cites a number of cases in support of his argument that an ALJ must explain why he did not adopt certain opinions that conflict with the RFC. Those cases are all distinguishable, however, because here the RFC does not conflict with Dr. Berg's medical opinion.

[31] *Lax*, 489 F.3d at 1084 (citations and quotations omitted).

Finally, Plaintiff argues that the ALJ's failure to include Plaintiff's limitation in initiating tasks and persisting at tasks in the hypothetical directed to the vocation expert was harmful and requires remand. But, as discussed above, the ALJ incorporated these limitations in the RFC, which was within the hypothetical posed to the vocational expert. Accordingly, this argument also fails.

The Court concludes the ALJ applied the correct legal standards and that his factual findings are supported by substantial evidence. As such, the Court denies Plaintiff's appeal and affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 29th day of June, 2021.

                                              ERIC F. MELGREN
                                              UNITED STATES DISTRICT JUDGE